[No. 30430-5-I.    Division One.    January 19, 1993.]

JOHN LAMBERT, *Appellant,* v. MARGARET MOREHOUSE,
ET AL, *Respondents.*

*Norman Cohen* and *Cohen & Keith-Miller, Inc. P.S.,* for appellant.

*Gary L. Ikeda, Rick D. Woods,* and *Sarah B. Yates,* for respondents.

PEKELIS, J. — In this multiclaim suit against several defendants, plaintiff John Lambert appeals the trial court's two summary judgment orders denying his claims for wrongful discharge, race discrimination, misrepresentation, negligent investigation, tortious interference, and defamation. Lambert contends that material issues of fact pertaining to each claim preclude summary judgment. We affirm.

I

FACTS

John Lambert was employed by defendant Group Health Cooperative (Group Health) from March 14, 1977, to December 22, 1988, at which time his employment was terminated. When the incidents leading to the termination took place, Lambert, an African-American, was employed as Group Health's manager of supply and distribution.

On March 15, 1988, Fredericka Gardonyi, a Group Health employee under Lambert's supervision, complained to Group Health's human resources administrator, Sue Alford, that Lambert had sexually harassed her. After investigating the matter and speaking with witnesses, Alford reported her findings to Lambert's supervisor, David O'Brien, the director of administrative services. Both concluded that Lambert's conduct did not constitute sexual harassment, but that Lambert had acted inappropriately. O'Brien issued Lambert a letter of reprimand advising him that any further incidents could subject him to discipline up to and including termination and supplied him with a copy of Group Health's policy prohibiting sexual harassment.

Gardonyi also filed a complaint about Lambert's conduct with the State Human Rights Commission. In connection with Gardonyi's complaint, Kathy Spencer, Group Health's assistant director of the Human Resources Division, reviewed Alford's report and talked with Lambert and O'Brien. Agreeing that there was inadequate evidence to conclude that Lam-

bert had sexually harassed Gardonyi, Spencer nonetheless also concurred with Alford and O'Brien's finding that Lambert had acted inappropriately toward Gardonyi. Spencer advised the Human Rights Commission of the action Group Health had taken, and the Commission entered a "no reasonable cause" finding.

Eight months after the Gardonyi incident, on November 25, 1988, Lambert's secretary, Cindy Cho, complained to Margaret Morehouse, Group Health's administrator of compensation and human resource services, that Lambert had sexually harassed her. Cho told Morehouse that over a period of several weeks Lambert had repeatedly subjected her to inappropriate physical and verbal conduct of a sexual nature, despite her protestations, threatened to fire her if she complained to anyone of his behavior, and in fact fired her when she complained to another employee in the Human Resources Division. Morehouse reported the matter to O'Brien, who placed both Lambert and Cho on paid administrative leave pending an investigation.

After conducting an investigation that included interviewing 27 employees, Morehouse offered Lambert an opportunity to respond before she prepared her report. The parties dispute the nature of the ensuing events between Morehouse, Lambert, and Lambert's attorney. Apparently, Morehouse and Lambert's attorney disagreed about the manner in which the investigation was being conducted. It is undisputed, however, that Lambert did not obtain the details of Cho's complaint and that, although invited to do so, Lambert did not meet with Morehouse or respond to the accusation.

Morehouse reported the results of her investigation to O'Brien, who reviewed the report and then telephoned Lambert. Again the parties dispute the nature of the ensuing events between O'Brien, Lambert, and Lambert's attorney. However, it is undisputed that owing to the advice of his attorney, Lambert did not meet with O'Brien or respond.

O'Brien then terminated Lambert's employment. O'Brien considered not only the Gardonyi and Cho incidents, but also

several other allegations and complaints of sexual harassment that had been lodged against Lambert. These included a charge made in 1988 by Lambert's former secretary, Cathy Avery, included in Morehouse's report, and complaints made in 1982 by warehouse employees, from which the Human Resources Division had concluded that Lambert had engaged in sexual harassment. The 1982 complaints had led to restrictions of Lambert's authority and a directive to Lambert that he review Group Health's sexual harassment policies.

Lambert initiated the 4-step grievance process provided for in Group Health's policy and procedure manual for "Grievances of Non-Union Employees". The first step involved bringing the situation to the attention of the immediate supervisor. O'Brien considered and denied the first-step grievance. Lambert proceeded to the second step, submitting a written grievance to O'Brien's supervisor, which was also denied. Lambert did not pursue the grievance process any further.

Instead, Lambert filed the present action against Group Health, O'Brien, Morehouse, Spencer, Cho, and Gardonyi. Lambert asserted claims for wrongful discharge, negligent investigation, misrepresentation, tortious interference, defamation, and race discrimination.

Defendants brought two motions for partial summary judgment. The trial court granted both motions, effectively dismissing Lambert's entire case. Lambert's motion for reconsideration was denied on June 25, 1991.

Lambert appeals, assigning error to the trial court's summary judgment for each defendant on each issue.

## II
### NEGLIGENT INVESTIGATION
Lambert contends that dismissal of his negligence claim was erroneous because he presented evidence of Group Health's negligent investigation of the sexual harassment complaints.

As a threshold matter, we must determine whether such a cause of action exists in the employment context. In *Lawson v. Boeing Co.*, 58 Wn. App. 261, 792 P.2d 545 (1990), *review denied*, 116 Wn.2d 1021 (1991), this court declined to decide whether the employer owed a duty to conduct a reasonable investigation prior to discharge. *Lawson*, at 265. Assuming such a duty existed, the *Lawson* court held that plaintiff had introduced no evidence, expert or otherwise, to establish the standard of reasonable care or to show a breach thereof. *Lawson*, at 266.

■ Confronted squarely with the issue in this case,[1] we conclude that Washington courts have not and should not recognize a cause of action for negligent investigation. With the exception of Montana, other jurisdictions have "uniformly rejected such claims". 3A A. & L. Larson, *Employment Discrimination* § 119.52, at 26-97 through 26-98 (1990) (citing cases from the Seventh Circuit, the Federal District Courts of Kansas, Nebraska, and Oregon); *see also Gossage v. Little Caesar Enters., Inc.*, 698 F. Supp. 160 (S.D. Ind. 1988); *Eklund v. Vincent Brass & Aluminum Co.*, 351 N.W.2d 371, 379 (Minn. Ct. App. 1984).

Plaintiff relies on a decision of the Federal District Court for Michigan and two decisions from Montana, each of which recognized a tort claim for negligent investigation. *See Chamberlain v. Bissell Inc.*, 547 F. Supp. 1067 (W.D. Mich. 1982); *Flanigan v. Prudential Fed. Sav. & Loan Ass'n*, 221 Mont. 419, 720 P.2d 257 (1986); *Crenshaw v. Bozeman Deaconess Hosp.*, 213 Mont. 488, 693 P.2d 487 (1984).[2] However, as

---

[1]Lambert's evidence below included the affidavit of employment investigation expert Ruth Gray, who asserted that defendants had breached accepted standards for such investigations. Thus, if Washington law recognizes such a claim, Lambert has arguably surmounted the evidentiary deficit that led to affirmance of the dismissal in *Lawson*.

[2]Lambert also cites *Babcock v. State*, 116 Wn.2d 596, 809 P.2d 143 (1991), presumably to demonstrate that Washington recognizes a tort claim against social service caseworkers for negligent foster care investigation and placement. But the *Babcock* opinion addresses only the issue of caseworker immunity, and, in any event, Lambert fails to explain why this vastly different claim should be extended to the employment context.

pointed out in *Gossage v. Little Caesar Enters., Inc., supra,* the Federal District Court's opinion in *Chamberlain* has been questioned, criticized, and not followed by several courts. 698 F. Supp. at 163. Moreover, Michigan authority subsequent to the Federal District Court's opinion in *Chamberlain* has repeatedly declined to impose upon employers an extracontractual duty in applying policies and procedures. *See, e.g., Struble v. Lacks Indus., Inc.,* 157 Mich. App. 169, 403 N.W.2d 71, 74 (1986) (per curiam). The Montana decisions are distinguishable because Montana, unlike Washington, recognizes an implicit covenant of good faith and fair dealing in at-will contracts of employment. *See Heltborg v. Modern Mach.,* 244 Mont. 24, 34-36, 795 P.2d 954, 960-61 (1990) (declining to "impose[] upon the employer a duty to use reasonable care in decision-making, based upon a theory of negligence", beyond the duty not to breach the covenant of good faith and fair dealing);[3] *accord, Gossage,* 698 F. Supp. at 163. Thus, we find Lambert's authority infirm at best.

This court declined to recognize a cause of action for negligent investigation in the context of an allegedly defective prosecutorial investigation of an arson. *Dever v. Fowler,* 63 Wn. App. 35, 44, 816 P.2d 1237, 824 P.2d 1237 (1991), *review denied,* 118 Wn.2d 1028 (1992). The *Dever* court, reasoning that such a cause of action "would impair vigorous prosecution and have a chilling effect upon law enforcement", held that plaintiff had failed to state a claim upon which relief could be granted. *Dever,* at 45.

As a matter of policy, we conclude that tort liability for negligent investigation is equally inappropriate in the employment relationship. To the extent an employee has an employment contract requiring specific reasons for dismissal, then the employer must conduct an adequate investigation or be liable for breach of that contract. *See Gaglidari v. Denny's Restaurants, Inc.,* 117 Wn.2d 426, 437, 815 P.2d 1362 (1991).

---

[3]The *Heltborg* court specifically noted that "[i]n both *Crenshaw* and *Flanigan* the alleged negligence was in conjunction with allegations properly forming a basis for a breach of the covenant. The negligence issues were not essential in either [case]." 244 Mont. at 35.

Thus, a negligence claim merely reasserts, in a tort context, the claim that the plaintiff's discharge breached contractual promises arising from an employer's disciplinary policies and procedures. "It does not add anything to this inquiry to show that the employer breached a standard of care, because the employer would be liable even without such a breach." 1 H. Perritt, Jr., *Employee Dismissal Law and Practice* 574 (3d ed. 1992); *accord, Struble*, 403 N.W.2d at 74. On the other hand, if an employment relationship is at will, then a claim for the tort of negligence would appear to conflict with the employer's right to discharge the employee for any cause or no cause without liability. *See* 3A A. & L. Larson, at 26-96. Under either scenario, we believe it improvident to recognize such a claim under Washington law and, therefore, decline to do so.[4]

### III
### DEFAMATION AND TORTIOUS INTERFERENCE

Lambert next contends that a material issue of fact precludes dismissal of his claims against defendants Cho and Gardonyi for defamation and tortious interference. We disagree.

Complaints of sexual harassment made in the context of workplace investigations are conditionally privileged under the laws of both defamation and tortious interference. *Lawson v. Boeing Co.*, at 266, 269. Thus, since it is undisputed that Cho's and Gardonyi's communications in this case were complaints of employment-related sexual harassment, the issue is whether their privilege was lost through abuse. The trial court found no genuine issue regarding defendants' abuse of the privilege because Lambert did not adequately deny defendants' statements. We agree with the trial court.

In *Lawson* we explained that "knowing falsity" establishes abuse of privilege and that a person who complains about sexual harassment necessarily has personal knowledge of

---

[4]Accordingly, we need not address defendants' subsidiary contention that the Industrial Insurance Act preempts Lambert's negligence claim.

the truth or falsity of the accusation. If plaintiff denies the defamatory allegations in response to a motion for summary judgment, we view that evidence in the light most favorable to plaintiff and cannot decide privilege as a matter of law. In such a case, a jury must resolve the abuse of privilege issue, that is, whether plaintiff's accuser was telling the truth. *Lawson*, at 267-69.

█ █ Lambert's evidence of denial is in his affidavit, which states "I did not sexually harass anyone; Kathy Avery or Cindy Cho."[5] In general, conclusory statements of fact will not suffice to defeat a summary judgment motion. *Grimwood v. University of Puget Sound, Inc.*, 110 Wn.2d 355, 359-60, 753 P.2d 517 (1988) (citing *American Linen Supply Co. v. Nursing Home Bldg. Corp.*, 15 Wn. App. 757, 767, 551 P.2d 1038 (1976)). In *Grimwood*, the plaintiff in a wrongful discharge suit submitted an affidavit contradicting his employer's conclusions regarding his uncooperative behavior. The Supreme Court held that the evidence was inadequate to defeat the employer's motion for summary judgment, because plaintiff failed to aver that the specific incidents of noncooperation did not occur. 110 Wn.2d at 360.

Here, as in *Grimwood*, the complaints against Lambert were concrete statements of fact; the defendants complained that Lambert had engaged in specific unwanted acts. Lambert denied the ensuing conclusion, sexual harassment, but not the specific facts alleged: offensive sexual remarks, threats, and retaliation. Lambert's assertion that he never sexually harassed anyone may express his personal belief and conclusion that his conduct did not rise to the level of sexual harassment, but it is not a specific evidentiary fact. By disputing only the legal conclusion of sexual harassment, Lambert did not create a genuine issue as to the truth or falsity of the underlying factual allegations.

Alternatively, Lambert contends that because the claims of privilege were unaccompanied by defendants' own verifi-

---

[5] Lambert's answers to interrogatories were even more general: "The degree to which Miss Cho lies is even greater than had been previously supposed"; "Gardonyi and Cho plain lied about plaintiff."

cations of the sexual harassment accusations, he had no need to submit an affidavit denying them. In effect, Lambert seeks to place upon a defendant an initial burden to establish nonabuse. Under *Lawson*, however, it is the *plaintiff's denial* that creates a material issue of fact as to whether defendant has abused the privilege. *See* 58 Wn. App. at 267 ("On summary judgment we must assume that the statements were false, since they are denied in [plaintiff's] affidavit."). Thus, once a defendant has met his or her burden of establishing the conditional privilege that arises when one complains of sexual harassment, plaintiff is obligated to come forward with specific evidence of falsity to avoid summary judgment. *See Scherer v. Rockwell Int'l Corp.*, 766 F. Supp. 593, 607 (N.D. Ill. 1991). This Lambert did not do.[6]

Accordingly, we affirm the trial court's dismissal of Lambert's defamation and tortious interference claims against Cho and Gardonyi.

Lambert also appeals from the dismissal of his claims for defamation and tortious interference against the other named defendants. However, the panel has determined that the disposition of these assignments of error, together with the resolution of the remaining assignments of error raised by Lambert's appeal, has no precedential value. Thus, the balance of this opinion will not be published, but it has been filed as a public record. *See* RCW 2.06.040.

FORREST and KENNEDY, JJ., concur.

Review denied at 121 Wn.2d 1022 (1993).

---

[6]Lambert also contends the trial court erred in failing to consider "verified denials" submitted in connection with an earlier motion for partial summary judgment. Although it is not entirely clear that this is the case, we have reviewed the entire record and conclude that Lambert submitted no evidence adequately denying the complaints against him.